Good morning, Your Honor. May it please the Court, Paul Scheritzel for Nationwide Life Insurance Company, and I would like to reserve three minutes for rebuttal. Nothing better on a cold, snowy day than title insurance. I agree. I'm going to go immediately to the issue upon which the Court asked for supplemental briefing. I think the law is fairly well established, and I think the main issue before the Court is the interpretation of the document at issue. Specifically, how does one accept out-of-coverage for the Alta IX endorsement? Is it fair to say that when you look at what you've submitted and what we've read, that there's a custom and practice as to how one goes about accepting out from the Alta IX endorsement certain things? Absolutely, Your Honor. And that custom is consistent with the purpose of title insurance, or at least one of the purposes, which is to provide the insured with information concerning title. The way to accept out-of-Alta IX coverage is to refer to the pertinent restrictions, covenants, and conditions in the context of the document where the document is also referenced on Schedule B. Now, what you're talking about here, I assume, are you got in Schedule B, what, Items 1 through 6, is that correct, B1? Part 1 of Schedule B. And what is your argument that, in effect, 1 through 5, if you list a document, those are the things that supposedly have priority or are a cloud on title or whatnot, is your argument that if you wish to expressly accept something, you have to do, in effect, what they did in Number 6? Take a look at Schedule B, Part 1. Of the title policy itself, sir? Yes, sir. You've got 1, 2, 3, 4, 5, 6, and then 6 has A, B, and C. How does one go about, in the real world, expressly accepting from the Alta IX endorsement, which, in effect, is an endorsement over an exclusion or an exception? That's exactly how you do it, Your Honor. Is that how you do it? Number 6. Yes, sir. You refer to the specific, the pertinent easement rights ensured under the license agreement dated March 4, 1991, as located on the survey prepared. If Commonwealth were correct, the mere reference to the survey would be enough to accept that of Alta IX coverage. They are not correct, and as exhibited here in Number 6, they did it correctly this time. They didn't do it correctly for the restrictions, but as far as easement rights go, they did it correctly by specifically referring to these easement rights as referenced on the applicable survey. Now, Commonwealth is saying that they were expressly ensuring over Schedule B, Part 2. In these types of policies, how many have a Part 2, roughly? In lenders' policies? Yes. It's not uncommon. It's 10%, 20%, 50%? Oh, I would say more than 50%. Okay. Because there are many instruments that will be subordinated. Usually where you list your UCC financing statements, for example. Yes, and as well as SMDAs. For instance, if you enter into a subordination, non-disturbance, and atonement agreement with existing tenants on the property, that is going to, in effect, subordinate their interest to the mortgage, that will be the kind of thing that you get put on Part 2. It is not the case, as Commonwealth argues, that the items on Part 2 are not exceptions. I think it's clear from the Schedule B itself. The top says exceptions from coverage, and I think that the sources that we have cited to show that Part 2 refers to exceptions, and I think that is fatal to Commonwealth's argument. Commonwealth's argument, and as found by the Court below, is that Part 2 of Schedule B does not refer to exceptions. I submit if there is industry practice material out there that refers to Part 2 of Schedule B as exceptions, that is fatal to Commonwealth's argument. I also submit that if there are industry sources out there. You're a party to this stuff in Part 2 anyway. You don't care about that. I don't care about it? I mean, in one sense, that it's subordinate. Yes, that's correct. That's correct. However, I think the title insurer cares. They don't want to. The entire idea, obviously, behind insurance is to accept out of as much coverage as possible. Otherwise, the title insurance company can't make money. So it's in the title insurance company's interest to have Part 2 refer to exceptions subject to the limited coverage for subordination. I think that's consistent with the purpose of the policy and consistent with the structure of the policy. Unless there are any more questions, I'd like to move on to Affili's supplemental. What makes you normally ask for an alternate endorsement? So, in other words, we're coming to a closing in a couple of days. Policy is delivered to you a couple of days or a day beforehand. I've had some where they're delivered the day of. And you say, okay, I'm looking at Schedule B. I want an alternate endorsement. What makes you make that request? I think most lenders ask for it as a matter of course because it provides them with coverage over all of the exceptions on the document. I think the average lender will look at the commitment. Except those that are expressly accepted. Except those that are expressly accepted and except those provisions that are expressly accepted. And so you're saying that the way it was done here is what was done in Number 6 is the way that it would be done. Yes, that's the way it should be done and consistent with the materials I provided with my supplemental briefing. And I believe consistent with the materials that Commonwealth has provided with its supplemental briefing, it's clear that the way to accept out-of-Alta 9 coverage is to refer to the specific provisions in question, not to the document itself. Now, in this case, I think, was it the understand or was it a statement that you didn't know until 2003 that there was a right of first refusal and a right to approve tenants, is that correct? I personally did not know and that is the statement. I mean nationwide. Yes, yes. They relied on the policy. Generally speaking, you buy this policy in part so the title insurer will go through it and point out potential traps. So there is, I think, reduced diligence. That's what the insured is paying for, in essence, is for the title insurance company to search title. That's one of the distinctions between title insurance and regular insurance, which is that title insurance looks back, determines what the universal existing risks are, and then accepts out of them. Okay. Now, you wanted to get back to the supplemental. Yes. Submissions. One thing I wanted to point out in Commonwealth submission was their item 2. The quotation that they refer to is to a commitment. This is on page 3 of their supplemental briefing. You will see that the first ellipsis, or the second ellipsis, I should say, the words that are removed are of a Knight-Berry commitment. A commitment is a very, very different document from a title insurance policy. This is a fundamental error. In fact, part 2 of your average commitment, if the court were to look at an ALTA form, we're in the Third Circuit Court of Appeals here. Obviously, I can't present those facts, but they are available online. A commitment is very different. They're very different. And part 2 of the commitment refers to exceptions. If you look at the ALTA policy, part 2 refers to exceptions. So this quotation actually supports nationwide, particularly with the third ellipsis, the middle of the way down with the sentence, In order to issue this coverage, the insurer will review all of the documents listed in Schedule B-2 containing CCRs, conditions, covenants, and restrictions, to confirm whether any of these additional items exist. The next ellipsis there, what is missing is easements, liens for liquidated damages, private assessments, or options or rights. Commonwealth has eliminated the phraseology which defines items, which is the provisions, which, again, it's nationwide's argument that you have to refer to these provisions, just as this provision here says, in order to accept out of coverage. So the other thing I wanted to point out was in number 3, the quote from number 3, the verbiage immediately prior to the quoted material is as follows. Additionally, the ALTA 9 protects the lender against loss due to any CCR violation, encroachment, charge, assessment, option. Excuse me, I'm sorry, where are you? I'm on page 4, Your Honor, or page 3, the bottom of page 3 and then over to page 4, beginning the content, the issuance of the ALTA 9 requires. If you were to print out the reference document, the sentence immediately prior to this text is, additionally, the ALTA 9 protects the lender against loss due to any CCR violation, encroachment, charge, assessment, option, easement, not expressly accepted to in Schedule B. That's what the language is immediately prior to what is in the brief. And it's my contention that that language fairly clearly supports nationwide's position that you have to refer to the provisions on Schedule B in order to accept out of the pertinent insurance coverage in the ALTA 9. Similarly, if you look at number 9 on page 7 of their supplemental brief, there's an ellipsis in the third line of the content. Again, if the court were to print those out, the court would find that the elided material is reading it in total. Paragraph 1B2 may be given provided all covenants, conditions, and restrictions shown in Schedule B are examined and specific reference is made in the particular Schedule B exception, and here's the material that is omitted. To any provision for easements, liens for liquidated damages, private charges or assessments, options to purchase, rights of first refusal or approval of future purchasers or occupants. Again, that supports nationwide's position. I see my time is running down, and my point is merely... We'll give you a few more minutes. This is an important issue. Well, my point is merely that if one goes through this supplemental memorandum submitted by Commonwealth, and looks at the material that has been elided, one will find more often than not that, in fact, it supports nationwide. Also, if one goes and looks into the documents as a whole rather than just the quoted material, I could spend some time here running through very favorable quotations in that material that are favorable to nationwide. Again, pointing out that Schedule B refers to exceptions. Once again, if that's true, that's fatal to Commonwealth's case, as well as other references to the fact that in order to accept that of the Altenine coverage, the specific provisions must be referred to and identified on Schedule B, which in this case they are not, which I believe requires reversal of the district court's opinion. Just run through again the distinction between instrument and right. I'm sorry, sir? The distinction between instrument and rights. Yes, sir. The instrument itself is the document. The rights are contained in the document. If you look at the Altenine endorsement, it is clear beyond per adventure, I would say, that the focus is on specific rights, rights of first refusal, assessment rights, things that will cause the lender harm if and when, as in this case, the lender takes title to the property. Therefore, it is those specific rights that are found in the document that should be referred to on Schedule B in order to accept that of them and in order to provide the lender with knowledge, hopefully at the commitment stage, that these things exist. Because at that point, the lender is able to look at the documentation and enter into other agreements with third parties to either waivers or subordinations. Or not do the deal. Or not do the deal. That's correct, Your Honor. Thank you. Thank you very much. Mr. Stone. Good morning, Your Honors. Good afternoon, Your Honors. And may it please the Court, Neal Traum for Appellee Commonwealth Land Title Insurance Company. First question, when you did your supplemental submission, why didn't you put in your own guidelines? After consulting with our clients, they were not aware of any explicit guidelines. There are a few guidelines that reference different companies. None of those is the particular company. Doesn't every company have guidelines for when it issues all-to-nine endorsements and what they mean? We were not able to find any. Our clients were not aware of any existing with respect to this endorsement. Now, you're a subsidiary, what, of Land America? We are related to Land America, but we are separate entities. And I am not aware that Commonwealth. Who owns Commonwealth titles? Does Land America own them? I don't know the simple answer to whether it's owned by. I know that they're related. Because the other side put in on page nine, Land America's Bulletin FL-057, and it clearly appears to support their position. Well, I'd like to start with that, Your Honor, and I don't think it does. I think the distinction that is not being made are between exceptions and exceptions from coverage. Is your main argument that when you get a Schedule B with a commitment or the final policy, and you look at it and you say, I want to have insured over certain things, that's the purpose of the all-to-nine endorsement. I want to insure over certain items, correct? It is to provide a kind of insurance that's otherwise absent, yes. Correct. And you're saying that that, in this case, was what was on Schedule B Part 2, is that correct? That was the insurance over. I'm saying that that is part of what 1B of the all-to-nine refers to. But I thought your argument in your briefing was that what you insured over in this case was Schedule B Part 2. With respect to that one paragraph of the all-to-nine endorsement, Your Honor, the all-to-nine endorsement has a lot of different insurances. The 1B2 insurance can only be a reference to things in Schedule B. Of those things that were on Schedule B Parts 1 and 2, what did you insure over by your all-to-nine endorsement? Those things that are not expressly accepted by Schedule B, which means are in Schedule B2, and which further are instruments that contain CCRs that satisfy Little, Roman 1 through 4. But most policies do not have a B2, do they, or Part 2? I'm not aware of the percentage of which ones have B1s and B2s. Well, things that have been put in say, in fact, one of the treatises says that Schedule B Part 2s are rare. Now, I think your opposing counsel says they're actually more common than that. But there's a lot of cases where even in mortgagee policies, you don't have a Schedule B Part 2. Is that correct? There are certainly cases, and Schedule B1 says that there may not be. And the reason here you wouldn't care about Schedule B Part 2 if you were nationwide, because they were a party to the items on Schedule B Part 2, were they not? I'm sorry. Can you repeat the question? Nationwide was a party to the items listed on Schedule B Part 2, the subordinate items. In this case, the three items listed, it is a party to, yes. So let me – I thought from what you said in your brief on page 9, that the language in your Ulta 9 endorsement here unambiguously refers only to documents in Part 2 of Schedule B. Correct, Paragraph 1B2 of the Ulta 9. And the reason for that, Your Honor, is because the lead-in language to Paragraph 1B2 of the Ulta 9 says in unambiguous terms, it provides insurance for loss or injury occurring at the date of the loss for if not expressly accepted in Schedule B for any instrument. Now, the only way something can be an instrument referred to in Schedule B but not expressly accepted in Schedule B is if you can find it somewhere in that schedule, but it doesn't follow language telling you you've got no coverage for it. But the – let's just play this out. Yes. So you're saying on page 9 of your brief that what you accepted out were those items, or what you insured over were those items on Schedule B Part 2? A subset of them, yes, a potential subset. Now, if you go from a mortgagee's policy or a lien-holder's policy to an owner's endorsement, that's an Ulta 9.1. Is that correct? I believe I've seen that, Your Honor. And that appears to have – and I'm looking at the language here in 9.1. It appears to be identical with the language that's used for a lien-holder's Ulta 9 endorsement. Is that correct? I don't know, Your Honor. Well, the language that is in Ulta 9, the company – this is for the mortgagee's policy. The company insures – this is the Ulta 9 endorsement. Well, that language I'm familiar with, Your Honor. Okay. 9.1 says the company insures against loss or damage sustained by the insured by reason of, one, the existence of data policy of any of the following unless expressly accepted in Schedule B, and it goes down to B, any instrument referred to in Schedule B as containing covenants, conditions, or restrictions on the land, which in addition provides for an option to purchase a right of first refusal or the prior approval of a future purchaser or occupant. Yes, Your Honor. That is identical in 9.1 to what is in 9.0. Is that correct? From what you said. I'm with you so far. Well, the problem I'm having is if the two endorsements are identical and the standard owner's policy only contains a general Schedule B, but not a Schedule B Part 2, then in 9.1, what does the Ulta 9 endorsement cover? Well, Your Honor, I don't know that an owner's policy could never have any kind of interest that is not subordinated to something else out there in the world. The owner's policy, all you're concerned about really is title. Correct. You can understand why you don't have a Part 2, but the point is if the Ulta 9 endorsement is identical. But, Your Honor, I don't agree with the premise. I think that there could be things subordinated to the insured interest that can be listed on a Part 2, and if those things exist. Well, then why doesn't an owner's policy not have a Schedule B Part 2? I am not aware that it never would have such a policy. It doesn't, according to Ulta's own forms. Well, Your Honor, if you read the Ulta 9 endorsement, the interpretation that is put forth by Nationwide is one that cannot be jived with the language of the policy. I make this statement. But what they're saying is, and they've put out treatises. Yes, Your Honor. North Carolina Bar Association. Yes, Your Honor. And others saying that the way it's done, and you take a look at this particular policy. I'm with you, Your Honor, completely. The way it's done is the way you do it in Number 6. And what they're really arguing here is that something in 4 and 5 was just missed, and it wasn't put out there. It was a mistake. It's what happened. But the consequences of a ruling in your favor would mean that an Ulta 9 endorsement is worthless. Absolutely not, Your Honor. First of all, the Ulta 9 endorsement insures against a number of things, none of which I do. What did your Ulta 9 endorsement insure over here then, other than something that's irrelevant or not important, which is Schedule B, Part 2? Well, I'm sorry, Your Honor, but Paragraphs 2, 3, 4, 5 do not deal with items that are accepted from coverage in Schedule B, but listed on Schedule B. None of Paragraph 1A, 1B, 1, 3, 4, or 5 address documents that are expressly accepted in Schedule B, but which are referenced in Schedule B. There is a lot of coverage provided in this endorsement apart from 1B, 2. And Nationwide's assessment that if this means what Commonwealth says it means, the Ulta 9 becomes worthless cannot be the case. For example, if there is – What did your policy here endorse over? Paragraph 1B, 2, if I understand your question correctly, Judge Amko. Right. Paragraph 1B, 2 insures over exactly – Why would Nationwide even care about getting an Ulta 9 endorsement and paying additional money for what's in Schedule B, Part 2? Because it's – there are parties to it. They know what it is. Well, first of all, I think I misspoke, Your Honor. The three documents that are listed on B2, Nationwide is not parties to. Lease between PMI and Farmore, assignment of lease, UCC – But eventually it came down through a subordination, non-disturbance, and attornement with Nationwide. That's correct, Your Honor. But you have to understand one of the things Nationwide mentioned is how a policy of title insurance differs from any other kind of insurance. And it is correct. It is different. But in a sense, that is what this Ulta 9 speaks to. Title insurance as a general matter provides a snapshot of the condition of title at the moment the policy issues. Future events do not trigger coverage the way they do in a casualty policy except – and that they show that something that was represented by the title company as of the date of the policy was not accurate. All eight of the insuring provisions in the main body of the policy deal with expressly that. The Ulta 9, or at least the parts of it that we are looking at, deal with future events that can affect the lender. If these documents – if these, excuse me, instruments that could cause harm to the lender in the future are listed on Schedule B, I respectfully submit there is no way anyone could read the policy does not insure against loss or damage which arise by reason. If there's no way that anyone could believe, why does the treatises, the bar associations, and the others who have weighed in on this say that there is a custom and practice that exists in this industry as to how one goes about accepting items from the Ulta 9 endorsement, which in effect insures over exceptions? It does not insure over exceptions. Certain exceptions. Your Honor, please. It does not insure over exceptions from coverage. And not one of the sources cited by Nationwide says that. I will look at one of the ones for which they claim there was creative asking. Number three. The sentence that was pointed out as purportedly supporting Nationwide's condition is the following. The Ulta 9 protects the lender against loss due to any CCR violation, encroachment, charge, assessment, option, easement, etc., not expressly accepted to in Schedule B. Why is there a difference between 1 through 5 and 6 on Schedule B, Part 1? For the reason, Your Honor, that 1 through 5 are instruments in which everything contained in that instrument is accepted. Six are particular rights contained within that instrument. It is completely counterintuitive, and not one of the sources cited by Nationwide says, Your Honor, that. I think you're making the argument for your opponent. I'm sorry. You're saying the sixth hasn't expressed except taking out of rights. Rights, yes. In this case, easement rights. But there is no basis. That are contained in particular documents that are referenced. Your Honor, the document, the policy, Ulta 9 itself does not say you must list rights. And respectfully, none of these sources say if you do not list the rights, you have not expressly accepted them. But if you were to do this all over again, wouldn't you have gone back and specifically pulled out of Items 4 and 5 the rights of first refusal and the approval of tenants? I don't know that we would, Your Honor. Just like you did in 6 with respect to the easement? It seems to me counterintuitive to list on something that is clearly excluded from coverage an entire instrument and to say that provides less protection for the title company than to list a specific right. But if 6 includes an entire instrument. It doesn't. Well, because what you did was you followed the tradition or the custom or practice of how you go about saying that I am not going to insure over Item 6 the particular easement rights. The question is how do you go about making clear that you are not insuring over rights of first refusal? You expressly accept the instrument, which is exactly what Ulta 9 says. And with respect, Your Honor. What they're saying is, what the treatises are saying, you expressly accept the right in the instrument. Expressly accept them. Do not expressly accept them from coverage. And none of them says if the instrument is accepted, it is insufficient. If there is a recommendation in an underwriting guideline to take an instrument that is listed on Schedule B2 as subordinate, that would trigger the coverage under Ulta 9, Paragraph 1B2. If there is an option for a right of first refusal or an option to repurchase, et cetera, in that instrument, it must be expressly accepted. And it will be listed on B1 or there will be language after it on B2 expressly accepting it. But why is there a difference in the way you went about Schedule B, Part 1, the way you set things out? I'm still not sure I understand your answer. The way we set them out. Yeah, you set out 6 qualitatively differently from 1 through 5. I'm sorry, Your Honor. No, it just says 6 is a qualitatively different way of expressing yourself than 1 through 5. I respectfully disagree. It is quantitatively different. It is quantitatively different by listing rights contained in an instrument as opposed to the instrument in its entirety, which by definition contains the instruments. If I may, Your Honor, even if you disagree with everything I have said, though I hope that is not the case, there are sources which clearly say to accept it from coverage, you do not need to accept individual rights. You only need to accept the instrument as we have cited them. The only way any of this extra, this material that is beyond the four corners of the document come in, is if under Pennsylvania law nationwide can point to a word or language or phrases that means, is meant by the parties or by consistent industry practice to represent something other than what it says. Even if there were a source or some sources that say what nationwide says they say with the policy. And respectfully, I disagree. Not one of them says if an instrument is expressly accepted from coverage in B-1, it is, coverage is added back by ALT-9. None of them say that. Maybe I've said this before. What is nationwide getting additional by this ALT-9 endorsement? They're getting quite a bit of coverage. They're getting coverage under 1A for a whole set of things that the insuring provisions don't cover. They're getting coverage under B, 1 through 5, none of which is echoed by the insuring provisions. The insuring provisions deal with the snapshot at the date of title. No, I'm talking about the ALT-9 endorsement. I think your brief said that the ALT-9 endorsement is only insuring over what's in Schedule B, Part 2, correct? Respectfully, Paragraph 1B-2 is only referencing B-2, Schedule B-2, excuse me. And it must reference something. And only 1B-2 of the ALT-9, you have to decide what part of Schedule B it references, because no other part of the ALT-9, which has a ton of provisions, says expressly accepted in Schedule B but referenced in Schedule B. My last question. The district court said that the burden of completing the title search is on nationwide. Now, you don't agree with that, do you? As an abstract proposition, I do not. Your Honor, the district court did not so find. The district court was referencing an extraneous source supplied by Commonwealth and noting that was what it said. It didn't help their position. However, Your Honor, there is an element of truth to the proposition that there is a duty upon the lender when taking out a title insurance policy. Nationwide has said, and we completely agree. The duty on the lender is to look at the commitment and to negotiate the commitment with the title company or the agent for the title company. To know two things. What exists that makes the title I'm insuring not clean, and what among that is insured? Respectfully. What usually happens is they then use a shorthand. They'll say, insure over, and then you come back and say, I'm not going to insure over X, Y, and Z. Well, Your Honor, I don't think you can read Part B, Schedule B Part 1, and think anything under the Declaration of Restrictions is insured. And I don't think you can read expressly accepted in Schedule B in the Alt and I and think it doesn't apply to the Declaration of Restrictions. What your opponent is saying is that expressly accepted is, in effect, the way you do it in 6. Not expressly accepted is the way you do it in 1 through 5. That's the argument. I believe that is the argument, Your Honor. And there's a lot of support out there for that position. None of the support says if it is listed as an instrument, it is not accepted. It is accepted. And their supplemental submission, I think, takes care of that. Well, some of the sources we have submitted, Your Honor, also distinguish between 1 and 2. And they say that there is not, it does not bring it back within coverage. All right. Thank you, Your Honors. Thank you, Mr. Sill. Mr. Sheridson. I will be brief, I hope. None of the submissions in Commonwealth supplemental briefing support the proposition that there is this difference between Parts 1 and Parts 2, as Commonwealth states here. The third item in the supplemental briefing from Commonwealth is this. And this goes to why the question, why didn't Commonwealth include its own materials? It did. This is it, number three. Commonwealth offers Alta IX coverage on residential mortgagee policies. It's residential, but it's mortgagee. It's the same endorsement. This is the source for the prior provision I read. If you go to the back of this, there is an underwriting checklist for lenders, Alta IX. And the issue is, when reviewing CCR documents, and it says, contains an easement, a lien, provision or charge or assessment, option, right of first refusal, future purchase approval. And then it says, yes. So down here it tells you, Commonwealth tells us what Commonwealth should do when this occurs, as it did in this case. And here's what Commonwealth says in their writings, not what they say before this court. They say, okay, but when taking exception to CCR, must expressly include relevant provision, e.g. terms and provisions of a declaration, including access easement created therein, dated blank. And where's that taken from? This is the third item of content in Commonwealth's supplemental briefing. This clearly supports Nationwide's position and is distinctly at odds with everything you have heard from Commonwealth today. I submit that given this, given the multiple sources submitted by Nationwide, given the kinds of errors you see in Commonwealth's briefings, such as the inability to discern the difference between a commitment and an insurance policy, that the court ought to be careful and discount virtually everything Commonwealth has said to this court. That document, was that submitted to us? The document was not submitted to us, only the writing that refers to part of the document. That's correct, sir. It's the item number three in their supplemental briefing. I would invite your co-counsel to take a look at it and see if that is a Commonwealth document and if we could get a copy of that. I have four copies. With respect, Your Honor. Shall I approach? No, just see if he objects. I do, Your Honor. This is by two particular agency operations. Is this a document that you? Obtained from my client. Absolutely not. I found it on the Internet. But did you refer to that document on page three of your supplemental submission? Yes, Your Honor. Is it okay if I have the full document? Absolutely. The website is provided as well. Okay. Thank you. But this is not a Commonwealth land title. Okay. I accept that. With that, I ask that the court reverse the questions. Good. We're going to ask that the lawyers get a transcript prepared of this oral argument and to share the costs of that. If you would check in with the clerk's office, they will tell you how to do that. Yes, sir. Thank you. The case was well argued. We will take the matter under advisory. Yes, sir.